IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAMIAN PEREZ PEREZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-25-1151-SLP |
| | ) |
| RUSSELL HOLT, et al., | ) |
| | ) |
| Respondents. | ) |

**O R D E R**

Petitioner, Damian Perez Perez, represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Before the Court is the Report and Recommendation [Doc. No. 11] (R&R) of United States Magistrate Judge Amanda Leigh Maxfield. The Magistrate Judge recommends granting, in part, the Petition. Respondents have filed an Objection [Doc. No. 14], and the matter is at issue. The Court reviews de novo any portion of the R&R to which Respondents have made specific objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Following issuance of the R&R, Petitioner filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No. 15], to which Respondents filed a Response [Doc. No. 17] and Petitioner replied [Doc. No. 18]. At the Court's direction, the parties also submitted supplemental briefing addressing, inter alia, mootness. *See* [Doc. Nos. 20, 23, 24].

1

Having conducted a de novo review of the record and the parties' submissions, the Court concludes the Petition and Motion are moot. The Court therefore ADOPTS IN PART the R&R, but DISMISSES this action without prejudice.

## I.     Background

Petitioner, a citizen of Mexico, has resided in the United States since approximately 1998 and lives in Tulsa, Oklahoma. Pet. [Doc. No. 1] at 11. In September 2025, the Department of Homeland Security ("DHS") initiated removal proceedings against him by serving a Notice to Appear (the "First Removal Proceeding"), charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled. *Id.* at 2; [Doc. No. 1-1]. Petitioner has been continuously detained at Cimarron Correctional Facility in Cushing, Oklahoma since his arrest pursuant to the mandatory detention provision set forth in 8 U.S.C. § 1225(b)(2)(A).[1]

On October 3, 2025, Petitioner filed this action, claiming violations of the Immigration and Nationality Act and a violation of his due process rights under the Fifth Amendment to the United States Constitution. Petitioner claims that § 1225(b)(2)(A) does not apply to him and that his continued detention without a bond hearing violates his due process rights.

On November 5, 2025, the Magistrate Judge issued an R&R recommending that the Court grant the Petition in part and order Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise

---

[1] As of the date of this Order, Petitioner remains at Cimarron Correctional Facility. *See* https://locator.ice.gov/odls/#/results (last visited March 3, 2026).

2

release him if a lawful bond hearing is not provided within that period. [Doc. No. 11] at 26. The R&R further recommended that the Court decline to reach Petitioner's due process claim. *Id*. at 25.

While this action was pending, and unbeknownst to the Magistrate Judge or this Court, various motions and orders were filed in the Immigration Court that are relevant to this case. On November 6, 2025, Petitioner filed a Motion to Terminate Removal Proceedings, which was denied by an Immigration Judge [IJ] on November 19, 2025. [Doc. No. 23-1]. In that order, the IJ noted that Petitioner "does not appear prima facie eligible to pursue adjustment of status at this time as the I-130 remains pending."[2] *Id.* However, the Order went on to explain that it also appeared that Petitioner is "eligible to pursue adjustment of status under INA 245(i) as a grandfathered derivative beneficiary" and ordered the parties to confer regarding this issue. *Id.*

Two days later, on November 21, 2025, Petitioner filed a Motion for Redetermination of Custody Status (a request for a bond hearing) which occurred on November 24, 2025—after the Magistrate Judge submitted her R&R. *See* [Doc. Nos. 17-1, 23]. The IJ denied the bond after determining the Petitioner "is a flight risk and a danger

---

[2] "An I-130 Petition is a form submitted by a U.S. citizen or Lawful Permanent Resident ("LPR") petitioning to establish a familial relationship with an immediate relative or close relative intending to immigrate to the U.S." *Saleh v. Blinken*, No. 5:24-CV-02450-EJD, 2025 WL 901942, at *1 (N.D. Cal. Mar. 25, 2025) (citation omitted).

to the community based on the I-213 filing and his prior voluntary return in 1999."[3]  [Doc. No. 17-2].  Petitioner appealed that order on December 10, 2025.  [Doc. No. 17-3].

On December 31, 2025, Petitioner again moved to terminate the First Removal Proceeding.  *See* [Doc. No. 15] at 2.  On January 5, 2026, the IJ granted Petitioner's motion and terminated the First Removal Proceeding without prejudice.  *See* Termination Order [Doc. No. 15-2].  The IJ noted that the Department of Homeland Security ("DHS") did not oppose termination "given the evidence and information submitted in the record" found that Petitioner had met his burden of demonstrating he was "clearly and beyond a doubt entitled to admission to the United States and is not inadmissible as charged," and the IJ further observed that Petitioner appeared eligible to apply for adjustment of status under INA § 245(i).  *Id.*  DHS waived its right to appeal the Termination Order.  *Id.*  In supplemental briefing submitted to this Court, Respondents now claim that "the decision not to oppose the motion and to waive appeal was an error by the trial attorney."  [Doc. No. 23] at 4.

Despite agreeing to the termination of the First Removal Proceeding and it being terminated by the IJ, Petitioner alleges—and Respondents do not dispute—that DHS did not immediately release Petitioner but instead continued to detain him for approximately three days before initiating new removal proceedings in a different immigration court (the

---

[3] "An I–213 is an official record routinely prepared by immigration officers [and] contains a summary of information obtained at the initial processing of an individual suspected of being an alien unlawfully present in the United States." *Gonzalez-Reyes v. Holder*, 313 F. App'x 690, 692 (5th Cir. 2009) (unpublished).  "The record includes, *inter alia,* the individual's name, address, immigration status, the circumstances of the individual's apprehension, and any substantive comments the individual may have made." *Id.*

4

"Second Removal Proceeding"). *See* Mot. [Doc. No. 15-1] at 2; Resp. [Doc. No. 17] at 4. The Second Removal Proceeding was initiated by DHS's issuance of a new Notice to Appear dated January 8, 2026. [Doc. No. 15-3]. The Second Notice to Appear classifies Petitioner as "an arriving alien" which is apparently yet another "inadvertent" error made by the Government who now claims he should have been classified as "an alien present in the United States who has not been admitted or paroled." [Doc. No. 23] at 4-5. The Second Notice to Appear charges Petitioner on two grounds. [Doc. No. 15-3]. The first is the same basis for the First Notice to Appear (that Petitioner is present in the United States without being admitted or paroled). However, there is now an additional charge that he has been unlawfully present in the United States for more than one year and for entering or attempted to reenter without admission. *Id.* Petitioner contends these changes are "irrelevant" to the resolution of his pending requests for relief. [Doc. No. 20] at 8 n.3.

    All of the above occurred without either party informing the Court of any updates, including that Petitioner received a bond hearing—the relief requested in this habeas action—or that the underlying action was terminated. Rather, the Court first learned of the developments in the Immigration Court when Petitioner filed his Motion for TRO and Preliminary Injunction (the "Motion for TRO") on January 9, 2026, after he was served with the Second Notice to Appear. In his Motion for TRO, Petitioner seeks immediate release on the grounds that DHS lacked authority to continue his detention following termination of the First Removal Proceeding. Mot. [Doc. No. 15-1] at 7.

    On January 28, 2026, following the briefing on the Motion for TRO, the Court entered an order directing supplemental briefing addressing, inter alia, a more complete

recitation of the factual and procedural history, the impact (if any) of the differences between the First and Second Notices to Appear, and whether Petitioner's claims are moot in light of the bond hearing and the initiation of the Second Removal Proceeding. [Doc. No. 19] at 3–5. The parties submitted their briefing, and the matter is at issue.

## II. Discussion

The central question before the Court is whether Petitioner's action is moot in its entirety following the developments in the two removal proceedings. Before analyzing the merits of the issue, it is necessary to explain what Petitioner is challenging and, perhaps more importantly, what Petitioner expressly disclaims challenging.

### A. Scope of Petitioner's Claims

In his Petition for Writ of Habeas Corpus [Doc. No. 1], Petitioner asserts the following claims:

- <u>Count I - Violation of the INA</u>: In Count I, Petitioner asserts his detention violates the Immigration and Nationality Act because his detention under 8 U.S.C. § 1225(b)(2) "does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings . . . ." [Doc. No. 1] ¶¶ 51-52.

- <u>Count II – Violation of Due Process</u>: In Count II, Petitioner contends his detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process." *Id.* ¶ 56.

As relief, Petitioner asks the Court to issue "a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within five days." *Id.* ¶ 7.

Petitioner's Motion for TRO seeks his immediate release on the grounds that DHS lacked authority to continue his detention following termination of the First Removal

Proceeding. Mot. [Doc. No. 15-1] at 7. While not raised in Petitioner's Motion for TRO, Petitioner's supplemental brief appears to also urge, for the first time, that the Court should order "either immediate release or a constitutionally sufficient bond hearing" on the grounds that Petitioner's bond hearing on November 24, 2025, in the First Removal Proceeding was "constitutionally deficient." [Doc. No. 20] at 5-7.

Petitioner's supplemental briefing also clarifies two important points. First, Petitioner explains that, in his view, the differences between the First Notice to Appear and the Second Notice to Appear as detailed in the Court's prior Order, [Doc. No. 19], "are irrelevant to this habeas case and the instant request for injunctive relief." [Doc. No. 20] at 8 n.3. Second, Petitioner states he "does not challenge ICE's right to file a new Notice to Appear after a termination without prejudice—only ICE's authority to detain him in between proceedings." *Id.*

Lastly, the Court notes that Petitioner has not moved to amend his Petition to add any of the claims or arguments he now presents through his briefing on his Motion for TRO. Respondents repeatedly argue—in a wholly conclusory fashion and without citation to authority—that Petitioner's current arguments are not properly before the Court but concede that Petitioner may bring his arguments in a new habeas action or in this one, if amended. *See* [Doc. No. 23] at 8 ("Thus, while Petitioner is free to seek redress for the alleged unlawful detention through the filing of a new lawsuit, he cannot do so through this habeas action."); *id.* at 9 ("If Petitioner seeks an order for a bond hearing in the new removal proceedings, Petitioner should file a new or amended petition for writ of habeas corpus seeking that relief."); [Doc. No. 17] at 5 ("While Petitioner *may* be able to seek

7

redress for this alleged unlawful detention in the form of another suit, he cannot do so via his TRO Motion."). The parties present no authority to the Court as to whether Petitioner may or must assert his new claims through an amended or new habeas action. Accordingly, the Court makes no determination as to that issue.

### B. Report & Recommendation

The R&R recommended that the Court grant the Petition in part and solely on Count I, ordering Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release him if a lawful bond hearing is not provided within that period. [Doc. No. 11] at 26. The R&R further recommended that the Court decline to reach Petitioner's due process claim at that time. *Id*. at 25. The Respondents objected to the R&R on two grounds: (1) that the R&R misapplied the jurisdiction stripping provision of 8 U.S.C. § 1252(g); and (2) the R&R misapplied the language of § 1225(b)(2)(A) and Petitioner is not entitled to a bond.

As to Respondent's jurisdictional objection and upon de novo review, the Court agrees with the Magistrate Judge that the Court has jurisdiction to review Petitioner's claims. As to the statutory objection, the Court further concurs with the Magistrate Judge's findings and rejects Respondents' statutory interpretation of §§ 1226(a) and 1225(b)(2)(A). The Court further adopts the reasoning set forth in *Lopez v. CoreCivic Cimarron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *3–7 (W.D. Okla. Jan. 21, 2026), where this Court has previously addressed, in a more detailed Order, these same issues. In doing so, the Court joins the decision reached by the vast majority of district courts in this

judicial district,[4] in district courts within the Tenth Circuit,[5] and across the country[6] to have addressed the same issues as those raised by Petitioner.[7]

Ultimately, the Court agrees with the R&R's conclusions over Respondents' objections and adopts the findings and conclusions to the extent that Petitioner was detained pursuant to § 1226 and entitled to a bond hearing in the First Removal Proceeding. However, the relief recommended by the Magistrate Judge has already been provided. Accordingly, the Court adopts the findings and conclusions of the R&R but turns to the issue of mootness to determine what relief, if any, remains available to Petitioner.

**C. Mootness**

It is undisputed that Petitioner received a bond hearing in the First Removal Proceeding. *See* Order Denying Bond [Doc. No. 17-2]; Pet.'s Supp. Br. [Doc. No. 20] at 3. It is further undisputed that the First Removal Proceeding was terminated. *See* Termination Order [Doc. No. 15-2]; [Doc. No. 20] at 4. Because Petitioner received a bond hearing and the First Removal Proceeding was terminated, "Respondents contend this case, as *currently*

---

[4] *See, e.g., Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *2 (W.D. Okla. Jan. 13, 2026) (collecting cases in this judicial district finding that § 1252(g) does not present a jurisdictional bar); *Lopez*, 2026 WL 165490 at *5 (collecting cases in this judicial district concluding that §1225(b)(2) does not govern the petitioner's detention).

[5] *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184 (D. Utah Jan. 16, 2026); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025).

[6] *See, e.g., Lopez*, 2026 WL 165490 at *7 (collecting cases concluding that §1226(a) is the governing statutory framework).

[7] The Court is certainly aware of authority to the contrary, including two decisions entered in this judicial district. *See Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3–5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302 at *5-12 (W.D. Okla. Dec. 26, 2025).

pled, is moot." [Doc. No. 23] at 6 (emphasis in original). Upon careful consideration of the materials presented, the Court agrees.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque,* 100 F.3d 863, 867 (10th Cir. 1996); *see also Alvarez v. Smith*, 558 U.S. 87 (2009). At all stages of the case, the parties must have a "personal stake in the outcome' of the lawsuit. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). In other words, the petitioner must have suffered an actual injury that is traceable to the respondent and can be redressed by a favorable decision. *Spencer*, 523 U.S. at 7. Where the petitioner has received all the relief requested in the petition, his claim is moot and should be dismissed, unless an exception to the mootness doctrine applies. *See Riley v. I.N.S.*, 310 F.3d 1253, 1256–57 (10th Cir. 2002).

Petitioner resists mootness on three grounds. First, he argues that the bond hearing he received in the First Removal Proceeding was "constitutionally deficient." [Doc. No. 20] at 5-7. Second, he contends he suffered a "secondary injury" when DHS continued to detain him during the three-day period between termination of the First Removal Proceeding and initiation of the Second Removal Proceeding. [Doc. No. 15-1] at 7; [Doc. No. 20] at 8. Third, he argues that the conduct by Respondents is the kind that can be repeated and yet evade review. [Doc. No. 20] at 4-5.

As to Petitioner's first argument regarding a deficient bond hearing, the Court assumes, without deciding, that Petitioner may urge this argument in his briefing without

amending his Petition.[8]  To the extent Petitioner challenges the IJ's decision to deny him bond, the claim must be dismissed for lack of jurisdiction.[9]  "The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review [and] [n]o court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  8 U.S.C. § 1226(e).  "In other words, 'Congress has specifically eliminated [Petitioner's] attempted means of review – a habeas petition pursuant to § 2241 – as a way of challenging the Attorney General's discretionary decision' regarding bond."

---

[8] While Respondents argue that this issue is not properly before the Court, they appear to do so on the grounds that the Court lacks jurisdiction generally—an argument that has been repeatedly rejected by this Court—rather than on the grounds that this particular claim or argument is not presented in the Petition. *See* [Doc. No. 23] at 8-9.  Because neither party presents binding authority related to whether Petitioner may challenge the constitutional sufficiency of a bond hearing that occurred during the pendency of this habeas action without amending the Petition, the Court assumes, without deciding, that he may do so for purposes of this Order. *See Medina-Herrera v. Noem*, No. CIV-25-1203-J (W.D. Okla. Jan. 6, 2026) (considering and rejecting a constitutional deficiency argument after ordering a bond hearing and dismissing the Petitioner's due process claim without requiring amendment); *but see Valle Vargas v. De Anda-Ybara*, No. CV 25-834 JB/GBW, 2026 WL 63932, at *3 (D.N.M. Jan. 8, 2026), *report and recommendation adopted sub nom. Valle Vargas v. De Anda-Ybarra*, No. CIV 25-0834 JB/GBW, 2026 WL 256810 (D.N.M. Jan. 30, 2026) ("While Petitioner attempts to allege an additional constitutional violation of unlawful removal in his response brief, . . . Petitioner has not formally amended his petition and as such that claim is not properly before the court." (citing *Borum v. Coffeyville State Bank*, 6 F. App'x 709, 712 (10th Cir. 2001))).

[9] "As a general matter, when a detainee has received a bond hearing before an Immigration Judge, the petitioner may appeal that IJ's decision to the BIA if not satisfied with the outcome." *Agustin v. Semaia*, No. 5:25-CV-02788-SRM-JDE, 2025 WL 3281531, at *1 (C.D. Cal. Nov. 25, 2025) (citation omitted); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021).  "Then, if the detainee disagrees with the BIA's decision, he or she may challenge the continued detention by filing a habeas petition." *Id.*  "Because of this established procedure, habeas review of an IJ's bond determination prior to appealing to the BIA would in most circumstances be improper." *Id.*  Petitioner is aware of this process because he has already filed an appeal to the BIA.  [Doc. No. 17-3].

11

*Wilson v. Choate*, No. 19-CV-2069-WJM, 2019 WL 13214057, at *4 (D. Colo. Nov. 4, 2019) (citations omitted).

The IJ denied bond after determining Petitioner posed a danger to the community and was a flight risk "based on the I-213 filing and his prior voluntary return in 1999." Bond Order [Doc. No. 20-3]; I-213 [Doc. No. 20-2] ("Lead Intelligence also referred to ICE that PEREZ-Perez would 'shoot ICE Officers if attempt to arrest.'"). While Petitioner may disagree with the IJ's reliance on that evidence and the IJ's ultimate determination, "it is not one this Court has jurisdiction to review." *Medina-Herrera v. Noem*, No. CIV-25-1203-J (W.D. Okla. Jan. 6, 2026) (finding the Court lacks subject matter jurisdiction to review the IJ's denial of a bond based on finding that a ten-year-old DUI made the petitioner a danger to the community); *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (affirming the district court's finding that it lacked jurisdiction to review an IJ's discretionary decision to deny bond on grounds that the petitioner was a danger to society).[10] Thus, the Court finds that the IJ relied on evidence in the record to make a discretionary decision to deny Petitioner bond; therefore, this Court lacks subject matter jurisdiction to review that decision.[11] This ruling, of course, does not speak to whether

---

[10] As here, the *Mwangi* petitioner was afforded a bond hearing pursuant to 8 U.S.C. § 1226, but the IJ denied bond after finding that the petitioner posed a danger to society. *See Mwangi*, 465 F. App'x at 786. The petitioner filed a § 2241 petition challenging that decision, and the Tenth Circuit affirmed the district court's finding that it lacked jurisdiction over the IJ's discretionary decision. *See id.* at 786–87.

[11] Petitioner cites to several district court opinions finding that a bond hearing was unconstitutional and retaining jurisdiction to grant habeas relief. *See generally* [Doc. Nos. 23, 24]. Upon careful review, the Court finds these cases factually distinguishable or otherwise inapposite. *See e.g.*, *Martinez Rodriguez v. Castro*, No. 2:25-CV-01294-KG-JFR, 2026 WL 252503 (D.N.M. Jan. 30, 2026) (granting habeas relief despite petitioner receiving a bond hearing because the IJ originally

Petitioner should be afforded a new bond hearing as it relates to the Second Removal Proceeding—an issue that is not before the Court presently.

As to Petitioner's remaining arguments regarding mootness exceptions as recognized by the Tenth Circuit in *Riley*, and after significant consideration, the Court finds Petitioner's arguments are too underdeveloped to merit granting habeas relief on the present record.[12]  Petitioner cites to no authority that defines or advises when a noncitizen should (or must) be released after his or her proceedings are terminated.   While three days *may* be presumptively unreasonable such that habeas relief could be warranted due to it being a "secondary injury" or otherwise, the Court is provided no authority to support such an argument.  Further, Petitioner provides no authority to support his argument that immediate release is the proper remedy to be applied in such a scenario.  *Cf. Rodriguez-Olalde v. United States*, No. CV 20-1102 KG-GJF, 2021 WL 1169712, at *3 (D.N.M. Mar. 26, 2021) ("The Court cannot 'modify [Petitioner's detention] now that it has been

---

placed the burden on the petitioner rather than the government); *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025) (finding the IJ relied on a Guatemalan arrest warrant in making her flight risk determination despite there being no outstanding warrant for arrest); *Barreno v. Baltasar*, No. 025-CV-03017-GPG-TPO, 2025 WL 3190936 (D. Colo. Nov. 14, 2025) (ordering a new bond hearing where the prior bond hearing placed the burden on petitioner).

Notably, Petitioner does not assert any arguments regarding impropriety of burden allocation at the bond hearing, and it further appears that ICE submitted the I-213 that the IJ relied on in determining Petitioner posed a danger to society.  *See* [Doc. No. 20] at 3.

[12] *See Moore v. Gibson*, 195 F.3d 1152, 1180 n. 17 (10th Cir. 1999) (acknowledging that petitioner raised a habeas claim with no argument or support and holding that: "We do not consider unsupported and undeveloped issues."); *Kirby v. Att'y Gen. ex rel. New Mexico*, No. 11-2082, 2011 WL 4346849, at *5 (10th Cir. Sept. 19, 2011) (unpublished slip op.) ("Mr. Kirby's conclusory assertion that his due-process rights were violated—without any factual foundation or legal analysis to support his claim—does not entitle him to relief.").

completed' or otherwise fashion a habeas remedy under § 2241. '[T]he best this [C]ourt could do . . . would be to declare he spent longer in [confinement] than he should have' which is an improper use of the writ.") (internal citations omitted). These issues are further compounded by the fact that a Second Removal Proceeding was initiated and is the basis for Petitioner's current detention, and Petitioner "does not challenge" the Second Removal Proceeding. [Doc. No. 20] at 8. In other words, despite ordering supplemental briefing, Petitioner does not clearly articulate or support how his requested relief of immediate release can be granted when his current detention is pursuant to a removal proceeding he does not challenge.

Similarly, Petitioner devoted a mere paragraph with no supporting legal authority to his argument that Respondents' action is the type encompassed by a mootness exception where the conduct is capable of repetition while evading review, sometimes called the "voluntary cessation" exception. *See Riley*, 310 F.3d at 1257; *see also* [Doc. No. 20] at 9; [Doc. No. 23]. The Court is mindful that the Tenth Circuit has routinely cautioned that this is a narrow exception "only to be used in exceptional situations" and "arises when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008) (internal quotation marks and citation omitted).

Applying these principles here, Petitioner has framed his argument as squarely relating to ICE's ability to commence and dismiss removal proceedings, arguing it has the ability to "moot" habeas actions pending before federal courts. [Doc. No. 20] at 9.

However, it is difficult to reconcile this argument with Petitioner's statement that he does not challenge the Second Removal Proceeding, and apparently, his current detention pursuant to that Second Removal Proceeding. Because Petitioner devotes only a few sentences to this issue, the argument is insufficiently developed to show that the "capable of repetition, yet evading review" exception applies. Thus, under these narrow circumstances, the Court concludes that the exceptions to the mootness doctrines are not met as presented in the record. Notably, this conclusion echoes that of the Tenth Circuit's decision in *Riley*, where the court likewise explained:

> We are somewhat concerned about the circumstances surrounding Appellant's release and the potential for the INS to resume Appellant's detention. However, while arguably the narrow exception of voluntary cessation may be applicable, the record provides inadequate development and support of this issue. Therefore, based on the record in front of us, we hold that Appellant's release from detention moots his challenge to the legality of his extended detention.

*Riley*, 310 F.3d at 1257.

Accordingly, on the record presented, the Court finds that the claims asserted in the current Petition before the Court are moot. Both causes of action presented in the Petition focused on Petitioner's detention without a bond hearing, *see generally* Pet. [Doc. No. 1], which he received in the First Removal Proceeding.[13] Further, Petitioner is currently detained in the Second Removal Proceeding based on a Second Notice to Appear which

---

[13] While not re-urged in his supplemental briefing, Petitioner's Reply brief in support of his Motion for TRO made a cursory argument that his action is not moot because the Petition also sought release as relief, in addition to or in the alternative of a bond hearing. [Doc. No. 18] at 2. This argument, too, is underdeveloped and cites to no legal authority.

Petitioner, himself, states he *does not challenge*. So even assuming *arguendo* that habeas relief would have been proper to address the three-day period, Petitioner provides no analysis as to the effect of the Second Notice to Appear. Thus, because the current detention is neither challenged nor tethered to the claims in the Petition, and because the action underlying the Petition (the First Removal Proceeding) has been terminated, Petitioner's claims as presented in the Petition are moot. *See United States v. Quezada-Enriquez*, 567 F.3d 1228, 1231 (10th Cir. 2009) ("Once it becomes impossible for a court to grant effectual relief, a live controversy does not exist, and a case is moot.") (citation omitted); *see also Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (case is moot where entry of judgment in petitioner's favor would amount to nothing more than a declaration he was wronged).

The Court emphasizes the narrowness of this ruling and its limitation to the unique facts presented in this case as well as to the briefing submitted by the parties. The Court makes no substantive rulings as to whether Petitioner's three-day detention was lawful or whether similar actions by the Government in the future could merit habeas relief; rather, the Court is simply not provided enough analysis or authority in the current record to fully address the issues presented in this case. Similarly, this ruling should not be construed to condone Respondents' actions in this matter, many of which the Court finds troubling.

### III.    Conclusion

IT IS THEREFORE ORDERED that the Court ADOPTS IN PART the Report and Recommendation [Doc. No. 11], but the Petition [Doc. No. 1] is DENIED as MOOT and this action is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Petitioner's Emergency Motion for Temporary Restraining Order [Doc. No. 15] is DENIED as MOOT.

A separate judgment shall be entered.

IT IS SO ORDERED this 3rd day of March, 2026.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE